IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRYANTIE ANN HARRIS,

    Plaintiff,

v.                              Civil Case No. 3:16cv490

DR. ZENIA BURNETTE,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on several motions to dismiss filed by the Defendants: a MOTION TO DISMISS (ECF No. 9) (Woody Mot.) filed by Defendants Dr. Sarah Huggins Scarbrough and Sheriff C.T. Woody, Jr., appearing in his official capacity, and a MOTION TO DISMISS OF DEFENDANTS SCHOOL BOARD OF THE CITY OF RICHMOND AND DR. MICHELLE BOYD (ECF No. 13) (Sch. Bd. Mot.) filed on behalf of the Defendant School Board of the City of Richmond and Defendant Dr. Michelle Boyd. For the reasons set out below, the Defendants' motions will be granted.

## BACKGROUND

**A.    Procedural Posture**

The Complaint (ECF No. 1) names Defendants Boyd, Zenia Burnette, Richmond Justice Center Jail, Richmond Public Schools, and Scarbrough as Defendants, and was filed timely, having been

filed within sixty days of the right to sue letter issued to Harris by the Equal Employment Opportunity Commission ("EEOC"). (Compl. 2). At the direction of the Court, the City of Richmond School Board "School Board" and Sheriff C.T. Woody, in his official capacity, were substituted as the properly named defendants in place of Richmond Justice Center Jail and Richmond Public Schools (ECF Nos. 12, 16). A motion to dismiss (ECF No. 9) was filed by Woody and Scarbrough. Boyd and the School Board later filed their own motion to dismiss. Harris filed responses (ECF Nos 17, 18), and Woody submitted a reply (ECF No. 20). Harris filed a supplemental response (ECF No. 16). The substance of the allegation is the same against each of these Defendants, and the facts at this stage must be viewed in the light most favorable to the Plaintiff; the Complaint must also be read liberally in light of Harris's status as a pro se litigant. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010).

B.  **Factual Background.**

Sometime in late August of 2015, Harris was hired by the School Board as a teacher assigned to the Richmond City Jail ("the Jail") to provide educational services to eligible inmates. Harris's employer remained the School Board; however, the Jail is operated by the Sheriff of the City of Richmond,

2

C.T. Woody ("Woody"). While assigned to teach at the Jail, Harris worked under the chain of command headed by Woody, and, apparently, she reported to Scarbrough, who was an employee of the Sheriff's Office and who served as the "jail program director." (Sch. Bd. Memo. at 2). Sometime shortly after she was hired, Harris became concerned about her ability to exit the Jail during an emergency (which required walking down six flights of stairs if the elevators were not operational), and communicated that concern to Scarborough. In an email to Scarborough, Harris wrote that, "[d]ue to health issues, the number of stairs that I can walk down is limited." (ECF No. 1, Attach. 3). The full content of the email exchange is not available, because Harris attached to the Complaint only a screenshot of her inbox, which shows only the first few words of each correspondence. Id.

Scarbrough responded to Harris's expressed concerns by requesting a meeting that day. At that meeting, Scarbrough allegedly described Harris as a "liability" before requiring her to surrender her security access badge and keys to the office. (Compl. 3). Scarbrough also allegedly had deputies escort Harris back to her office where she was required to pack up her belongings and leave. Id. This action seems to have amounted to the effective termination of Harris's service as a teacher at

Case 3:16-cv-00490-REP Document 22 Filed 01/23/17 Page 4 of 9 PageID# 110

Case 3:16-cv-00490-REP Document 22 Filed 01/23/17 Page 4 of 9 PageID# 110

the Jail, but the logistics remain opaque; however, it seems as if Harris's employment with the City was also terminated.

As best can be determined from the Complaint and the briefs, the particular educational program through which Harris was employed is in the nature of a joint venture between the Sheriff's office and the School Board. The program organizationally falls under the umbrella of the School Board, but it serves inmates and is thus functionally dependent on the Sheriff's Office for access to the incarcerated students. According to Woody's motion to dismiss, this arrangement is pursuant to Virginia law (which mandates education for eligible incarcerated individuals under 18) and a written agreement between the two entities. (Woody Mot. 4). Under that agreement, Woody provided "the meeting space and security for the educational environment." Id. As the "jail program director," Scarbrough apparently had the authority to deny access to Harris, an employee chosen by the School Board to teach in that program. However, there is no allegation that either Scarborough or Woody had the authority to hire or fire Harris.

The Complaint provides that, after being forced to leave the Jail by Scarbrough, "[e]fforts to resolve this matter through the Richmond Public School [sic] and The Richmond Justice Center were unsuccessful." (Compl. 3). Harris states that, when Scarbrough "revoked" her access to the Jail, her

4

employment was effectively terminated because her job required the access that Scarbrough had revoked. Id. In her reply to the current motions to dismiss, Harris provides further that, "for three months my employer, Richmond Public Schools attempted to get Dr. Scarbrough to meet with them to discuss how to get me back into the building to continue my position as Jail Teacher" and that Scarbrough responded by asking for the name of a new candidate to fill the position. (Harris Reply 2). Harris's reply further alleges that in this correspondence between Scarbrough and her employer, Scarbrough indicated that there would be new "physical requirements for any new Jail Teacher that Richmond Public School sent." Id. Neither the Complaint nor the Reply indicate when Harris's employment with the School Board was actually terminated, but the "Intake Questionnaire" that Harris filled out for the EEOC, which is attached to the Complaint, provides 11/10/2015 as the "Date Quit/Discharged." (Compl. Attach. 1-1).

Harris alleges that her quasi-termination was solely "due to Dr. Scarbrough's perception that I was disabled," and maintains that she is "physically and mentally qualified to perform the duties of that position". Id. This statement is in tension with how Harris filled out her questionnaire with the EEOC, in which she checked the box indicating that, "Yes, I have a disability." (Compl. Attach. 1-2). In their Motion to Dismiss

5

(ECF No. 9), Woody and Scarbrough confirm that Harris was terminated because "[she] presented a safety and security risk for the jail," while Harris continues seemingly to assert that she has no disability. (Harris Reply 1, ECF No. 21). However, Harris told Scarborough and the EEOC that she was disabled. The advice to the EEOC is incorporated in, and attached to, the Complaint. Therefore, for purposes of deciding the motions to dismiss, and in any future amended Complaint, Harris must be treated as alleging a disability.

Based on these facts, Harris filed a timely suit against Scarbrough, Woody (Scarbrough's employer), and School Board (Harris's employer). (Compl. 1). Although she has not specified their roles in her complaint, Harris also named Defendants Michelle Boyd and Zenia Burnette in her Complaint, and her "Intake Questionnaire" with the EEOC listed them as her immediate supervisors. (Compl. Attach. 1-1). Burnette is no longer employed by the School Board, has not been successfully served with process (ECF No. 5), and the Complaint against her must be dismissed on that ground. The Complaint also makes no discernable claim against Boyd.

## ANALYSIS AND LEGAL STANDARDS

### A. The Claims Against Scarbrough, Boyd, and Burnette

Under any view of the facts, the suits against Scarbrough, Boyd, and Burnette must be dismissed. Beyond the fact that the

6

Complaint makes no discernible claims against Boyd or Burnette (and that the latter was never served), individual supervisors are not liable under the ADA for the delegable decisions they make on behalf of their employers. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994); Stephens v. Kay Mgmt. Co., 907 F. Supp. 169, 172 (E.D. Va. 1995); see also 42 U.S.C. § 12111(2). Such delegable decisions include the allegedly discriminatory conduct contained in the Complaint, i.e. decisions to terminate employees. See Stephens, 907 F. Supp. at 173-74 ("After Birkbeck, there is no personal liability under either the ADEA or Title VII for individuals making a decision to terminate employment."). Because the ADA does not impose liability on individual supervisors under the circumstances alleged in this case, further amending of the Complaint would be futile. The Complaint will therefore be dismissed with prejudice against Scarborough, Boyd, and Burnette.

**B. The Claims Against the School Board and Woody**

The Complaint must also be dismissed as to the School Board and Woody. As relevant to this case, the ADA imposes liability only for the discriminatory employment decisions made by an "employer" (as provided in the definition of "covered entity") against an "employee." See 42 U.S.C. §§ 12112(a), 12111(4)-(5). But, even accepting the Complaint as true and reading it liberally, Harris's actual employer was the School Board, not

7

Woody. Moreover, the discriminatory action allegedly taken was by Scarbrough, an employee of Woody but <u>not</u> the employer of Harris. Put together, Harris's claims therefore fail against each entity. Because Harris has not alleged that the School Board has taken any discriminatory action against her, she has not stated a claim upon which relief can be granted against the School Board. And, because (as presently alleged) the Sheriff's Office is not Harris's employer, she has not stated a claim under the ADA against Woody either. Thus, the Complaint must also be dismissed against the School Board and Woody.

The dismissal against Woody and the School Board will be without prejudice and with leave to amend on the basis of the "joint employer" doctrine if, and only if, there are facts that support such a theory. See <u>Butler v. Drive Auto. Indus. of Am., Inc.</u>, 793 F.3d 404, 409 (4th Cir. 2015). Although the Complaint does not currently state a claim against either Woody or the School Board, it is conceivable that an amended complaint could present facts indicating that the Sheriff's Office and the School Board should be treated as "joint employers" as provided by that doctrine. Therefore, the dismissal of the Complaint will be without prejudice as to Defendants Woody and the School Board.

## CONCLUSION

For the reasons set forth above, the motions to dismiss (ECF Nos. 9, 13) will be granted, and the action will be dismissed with prejudice as the individual Defendants Michelle Boyd, Sarah Huggins, and Zenia Burnette. The motions to dismiss will also be granted as to Woody and the School Board, but the matter will be dismissed without prejudice, with leave to amend on the basis of the joint employer doctrine if, and only if, there are facts that support such a theory.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 20, 2017